516 So.2d 1275 (1987)
Diane Gail JOHNSON, Plaintiff-Appellant,
v.
Joe GANT, Defendant-Appellee.
No. 19179-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Claudius E. Whitmeyer, Shreveport, for plaintiff-appellant.
Bowers & Bowers by Gary A. Bowers, Shreveport, for defendant-appellee.
Before FRED W. JONES, JR., SEXTON and NORRIS, JJ.
SEXTON, Judge.
Diane Gail Johnson filed suit against Joe Gant to establish the paternity of her minor child. The trial court rendered judgment in favor of Joe Gant, holding that paternity had not been established. Diane Johnson appeals the judgment adverse to her. We affirm the trial court judgment.
Christopher Johnson was born to Diane Gail Johnson on March 1, 1974. Eleven and one-half years after the birth of her son, Ms. Johnson filed suit alleging paternity in Joe Gant, claiming to have had a relationship with him at the time of conception of her son.
The trial court denied her claim noting that while there was evidence tending to show that Mr. Gant was the father of the child, the evidence nevertheless failed to demonstrate by a preponderance of the evidence that Mr. Gant was the father of Christopher Johnson. Central to the trial court's holding was its evaluation of blood tests of the mother, child and alleged father. The court determined that these tests indicated an insufficient probability of paternity noting that the expert serologist only testified that it was "possible" that Mr. Gant was the father and could not testify that it was not "more probable than not" that Mr. Gant was the father of the child. Finally, upon comparing the laboratory evidence to plaintiff's version of the factual circumstances surrounding her relationship with Mr. Gant, the trial court determined that the plaintiff had not carried her burden of proof.
Ms. Johnson's appeal asserts that the trial court failed to give proper interpretation to the blood tests and was in error in finding that the facts of the case failed to indicate by a preponderance of the evidence that Mr. Gant was the father of the child.
Appellee argues that the blood tests failed to demonstrate with sufficient certainty that Mr. Gant was the father of Christopher Johnson and that the record simply does not mandate such a conclusion.
Plaintiff's burden is set out by LSA-C.C. Art. 209(A):
Art. 209. Proof of filiation
A. A child not entitled to legitimate filiation nor filiated by the initiative of *1276 the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
....
Additionally, LSA-R.S. 9:397.3(D), relevant to the use of blood tests in paternity cases, reads as follows:
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.
Results of blood testing done by the serology section of the North Louisiana Criminalistics Laboratory were introduced at trial. Pat Wojtkiewicz, supervisor of this section and an expert in preparation and performing of blood testing, testified relevant to the results. He stated that the analysis of the blood test revealed that the defendant could not be excluded as the father of Christopher Johnson, but that the results did not demonstrate that more probably than not the defendant was the father.
Mr. Wojtkiewicz, who seems to have extensive education and experience pertinent to paternity blood tests, testified that nineteen various classifications were made on the blood of each of the three persons tested, to include thirteen blood groupings and six red cell antigens. As a result of these tests, he testified that the defendant was assessed a paternity index of 3.7 from an index or guidelines published by a joint commission of the American Medical Association and the American Bar Association in 1976.[1] Mr. Wojtkiewicz said that there are various numerical values on the paternity index, the lowest of which is 10, which is characterized as being a "slight indication" of paternity. He further explained that a value of 20 is characterized as a "significant indication," a value of 100 is classified as a "strong indication," and a value of 1,000 is classified as "paternity proven."
Appellant strongly relies on Mr. Wojtkiewicz's testimony with respect to the ABO blood grouping, i.e, whether the blood type is A, B, O, etc. Statistically, Mr. Wojtkiewicz testified that this grouping indicated that there was a 79 percent relative probability that Mr. Gant was the father because 7.9 percent of black males have an ABO blood grouping of B as do Mr. Gant and the child at issue, Christopher Johnson.[2]
We concede that at first glance, especially in light of the 51 percent preponderance standard of civil cases, the 79 percent figure seems impressive. Upon thorough review, however, we find this figure illusory.
As is often the case, percentages and statistics used by scientists are baffling to the legal profession. We admit to being somewhat befuddled by the scientific nature of this record, the scientific shorthand and the various probability figures which seem contradictory.
In explaining the 79 percent figure, Mr. Wojtkiewicz related this figure to the ABO blood group to which Mr. Gant belonged and said this simply meant that the father must come from a member of this blood group which made up 7.9 percent of the black male population. As we appreciate *1277 his testimony, it is that this is only one indication and that it is necessary to perform other tests which may increase the likelihood that Mr. Gant could be the father or which would exclude him. In several instances, he noted that specific blood characteristics of Mr. Gant, if slightly different, would have resulted in a doubling of Mr. Gant's paternity index or even a quadrupling thereof.
Thus, the conclusion is inescapable on this record that Mr. Wojtkiewicz specifically testified that all of the nineteen blood tests he performed, when contrasted with the current knowledge of his profession with respect to paternity, yielded a paternity index significantly below that of a "slight indication."
In sum, therefore, we find the initially impressive statistics cited by plaintiff in support of her case unpersuasive in evaluating whether Mr. Gant was the father of the child. Clearly the scientific expert testified that the evidence failed to prove more probably than not that Mr. Gant was the father of the child, and the plaintiff has failed to demonstrate otherwise.
Appellant also argues that the other facts of the case, when coupled with Mr. Wojtkiewicz's testimony, show by a preponderance of the evidence that Mr. Gant was the father of Christopher Johnson.
As might be expected, the testimony in the case is in some conflict. Both parties testified that they first met in or around March of 1973, and that they had rendezvoused at hotels on at least two occasions to engage in sexual intercourse. Both parties had difficulty pinpointing the dates of these occurrences. Mr. Gant asserted that the relationship lasted only a matter of weeks, while Ms. Johnson characterized it as an affair of several months.
No person could testify that they ever heard Mr. Gant admit being the father of Christopher. The only time the parties were seen in each other's company was when they separately attended the same social function. Ms. Johnson apparently seldom discussed her relationship with Mr. Gant with her friends. Ms. Johnson and her mother testified that Mr. Gant gave the child a Bible one Christmas and reviewed his report card on one occasion, all of which was denied by Mr. Gant. Mr. Gant did concede receiving a couple of gifts from Ms. Johnson, one of which was for his birthday in July of 1973.
Considering the scientific evidence of Mr. Wojtkiewicz and the lay testimony summarized above, we cannot say upon review that the trial court was manifestly in error in rejecting plaintiff's demands. We agree with the trial court that there is some evidence suggesting that Mr. Gant was the father, but that the plaintiff has failed to demonstrate by a preponderance of the evidence that such was the case. The judgment of the trial court is therefore affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The paternity index was not further classified by name nor was a copy of it introduced. However, counsel for both parties and the trial court seemed thoroughly familiar with it.
[2] How a 7.9 percent population figure translated to a 79 percent probabilty was not explained. Also we assume, though it is not clear from the testimony, that the 7.9 percent figure refers to black males rather than the entire black population. As will be apparent, however, neither question is important to the result reached herein.