509 So.2d 35 (1987)
Regina PATTERSON in the Interest of Eric Dewayne PATTERSON
v.
Ronald Lee JOHNSON.
No. CA 86 0378.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*36 Lenette B. Romar, Baton Rouge, for plaintiff-appellee Regina Patterson in the Interest of Eric Dewayne Patterson.
Frank T. Scott, Jr., Baton Rouge, for defendant-appellant Ronald Lee Johnson.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
This is a paternity suit in which plaintiff, Regina Patterson, seeks to establish that defendant, Ronald Lee Johnson, is the father of her son, Eric Dewayne Patterson, and to compel him to pay child support in the amount of $300.00 per month.
Ms. Patterson and Mr. Johnson were acquainted around 1969-1970 when they were both students at Louisiana State University. Plaintiff claims that Eric was conceived on January 21, 1970, the result of an isolated act of sexual intercourse between the parties. Defendant maintains their relationship at this time was purely platonic and that no sexual encounter occurred.
The trial court ordered blood tests to be taken to determine paternity. The tests resulted in a 98.62% probability of paternity. After hearing testimony from witnesses for both sides, the trial court rendered *37 judgment in favor of plaintiff, as to paternity, pretermitting child support. Defendant now appeals, claiming the trial court erred in admitting the results of the blood tests without allowing defendant the opportunity to cross-examine the court-appointed experts that conducted the tests, and that plaintiff failed to prove by a preponderance of the evidence that defendant is the father.

BLOOD TESTS
The Uniform Act on Blood Tests to Determine Paternity, LSA-R.S. 9:396 et seq., was amended during the 1985 legislative session. La. Const. art. III, § 19 provides that "[a]ll laws shall take effect on the sixtieth day after final adjournment of the session in which they were enacted,.... However, any bill may specify an earlier or later effective date."
Since these amendments are silent as to their effective date, it is clear they were in effect as of October 28, 1985, the date of trial in the instant case. However, both parties in this matter rested their arguments on these statutes as they appeared prior to the 1985 amendments. A substantive law is one that creates an obligation, while a procedural, remedial or curative statute relates to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corporation, 478 So.2d 1223 (La.1985). By adopting this Act, the legislature intended to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability. McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir.1980). The amendments pertinent to this case are procedural in nature and are thus given retroactive effect in the absence of any language showing a contrary intent. See Bailey v. Douglas, 478 So.2d 172 (La.App. 3d Cir.1985), writ denied, 479 So.2d 365 (La.1985).
Before the 1985 amendment, LSA-R.S. 9:397 read as follows:
The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court.
LSA-R.S. 9:397 now provides:
The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.
Defendant claims he was deprived of his right to cross-examine the experts who conducted the blood tests. We note that cases decided prior to the 1985 amendments did hold that defendant has the right to cross-examine the experts. McGowan, 393 So.2d 278 (La.App. 1st Cir.1980); La Pierre v. Gibson, 420 So.2d 990 (La.App. 4th Cir.1982), writ denied, 423 So.2d 1150 (La.1982). However, the language as to calling the experts as witnesses to testify to their findings and expressly allowing the parties to cross-examine them is conspicuously omitted from LSA-R.S. 9:397 after the 1985 amendment. The phrase "expert or experts" also makes it explicit that a court may now appoint in its discretion any number of experts, including one. Bailey, 478 So.2d at 176. Since the procedural safeguards in this Act are to be applied retroactively, defendant has the right to summon and examine the experts only on his own initiative under LSA-R.S. 9:397.3[1]. *38 After reviewing the record, we find that defendant issued no subpoenas or conducted no depositions in order to cross-examine the experts. He is not entitled to rely on plaintiff's calling them for him to cross-examine.
Defendant further contends that plaintiff failed to establish a chain of custody of the blood samples. LSA-R.S. 9:397.2 provides:
The chain of custody of blood samples taken under this Part may be established by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity.
In this case, the blood samples were taken at the Medical Laboratory of Baton Rouge. They were then sent to Roche Biomedical Laboratories, Inc., in Burlington, North Carolina for the tests to be performed. The client authorization form on the report entitled "Blood Testing for Paternity Evaluation" filed into evidence contains a section labeled "Chain of Custody", which provides the signatures of the persons packaging and receiving the specimens and the date and time they were received. The section also contains a checklist completed by the technician who received the specimens attesting to the facts that the box was taped, the tape was intact and initialed, and there were no signs of tampering or evidence that the package had been opened.
Further, the report contains a notarized certificate signed by James W. Geyer, Ph.D. Director, and Ronald Barwick, Ph.D. Associate Director, that the testing was conducted in accordance with protocols published by the American Association for Histocompatibility and Immunogenetics and the American Association of Blood Banks and that the conclusions were determined independently by them and are correct as reported. An affidavit is a declaration or statement of facts personally known to the affiant, reduced to writing and sworn to by the affiant before an officer who has authority to administer oaths, such as a notary public. James D. Johnson, Jr., A Basic Louisiana Notary Guide (1986), at page 679.
The blood specimens were packaged on July 9, 1985, and received in the Burlington Laboratory Paternity Department on July 10, 1985. The affidavit is dated July 24, 1985. We find that this verified documentation of the chain of custody was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity. Thus, the requirements of the applicable statutes were satisfied.

PREPONDERANCE OF THE EVIDENCE
Defendant next contends that plaintiff failed to carry her burden of proof that defendant is the father of her child by a preponderance of the evidence as required by La. C.C. art. 209.
In its written reasons for judgment, the trial court stated, "The testimony of *39 the plaintiff and her witnesses combined with the results of the blood tests convinced the court that the defendant was the father of plaintiff's child."
Ms. Patterson testified that she and Mr. Johnson became friends in 1969 when a group of their friends at LSU would get together to have parties or play cards. She stated that she and Mr. Johnson attended a party on January 21, 1970, the last day of the fall semester, and had sexual intercourse that night, and that Eric was born on October 19, 1970. She also testified she was having sexual relations with no one else at this time. She informed Mr. Johnson of the pregnancy, but he told her he was not interested in marriage.
Ms. Patterson stated that Mr. Johnson first saw Eric when he was eighteen months old when Mr. Johnson drove her to Morgan City to see Eric at her mother's. The next time Mr. Johnson saw Eric was in 1981 when Ms. Patterson contacted him following a doctor's advice to ascertain his medical history, due to the development of difficulties with Eric's legs. Mr. Johnson told her his grandmother had crippling arthritis. A photograph of Mr. Johnson and Eric taken at this meeting was admitted into evidence without objection. Mr. Johnson continued to visit Eric on weekends to play games or take him on outings such as to the movies. It is undisputed that Eric would refer to Mr. Johnson as "dad".
Mr. Johnson testified he maintained a romantic relationship with only one woman, Delores Smith, at the time Eric was conceived. He and Ms. Smith later married, had one son, and divorced in 1982. He admitted he and Ms. Patterson had a sexual relationship around 1981 or 1982, and that he cultivated a relationship with Eric, giving him a computer for Christmas in 1983 and allowing him to call him "dad" without objection.
Eric testified as to the father-son relationship he believed he and Mr. Johnson enjoyed. Witnesses for Ms. Patterson testified they were told by Eric and his mother that Mr. Johnson was the father, they observed Eric and Mr. Johnson together on several occasions, and that Eric would introduce Mr. Johnson as his father. One witness also testified as to a conversation she had with Mr. Johnson about Eric's being his son.
Mr. Johnson's former roommates testified they knew of no relationship between Ms. Patterson and Mr. Johnson at the time Eric was conceived. Defendant's cousin also testified that Mr. Johnson confided in her a great deal and that he never mentioned a relationship with Ms. Patterson.
Considering the totality of the above facts, the trial court could reasonably have determined paternity based on the above evidence. An appellate court may not disturb a trial court's evaluations of credibility and factual determinations unless the record reveals that the trial court's decision is manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A Rule Nisi to determine child support was passed without date, so this issue was not before us on appeal. Plaintiff may seek child support following the judgment of paternity under LSA-R.S. 9:399.
We therefore affirm the judgment of the trial court decreeing Ronald Lee Johnson to be the father of Eric Dewayne Patterson. All costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.
LANIER, J., concurs in the result.
NOTES
[1] LSA-R.S. 9:397.3 provides:

A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child. (Emphasis added).