521 So.2d 575 (1988)
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES, OFFICE OF FAMILY SECURITY In the Interest of Laura J. BANKSTON
v.
Michael P. DAVIS.
No. 87 CA 0871.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*576 Thomas J. Hogan, Greensburg, for Appellant Michael P. Davis.
Mack McCraney, Office of the Dist. Atty., Amite, for Appellee.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This is a paternity action brought under LSA-R.S. 46:236 by the State of Louisiana through the Department of Health and Human Resources, Office of Family Security (hereinafter DHHR), on behalf of the child of Laura Jo Bankston. Laura Jo Bankston gave birth to a son on April 19, 1975; the child was eleven years old at the time this matter was tried. DHHR seeks to establish that Michael P. Davis, defendant, is the child's father, and to compel him to pay child support.
Following trial on the merits, the trial court ruled that Michael Davis is the father of the child and ordered him to pay support in the amount of $200.00 per month. From this ruling, Michael Davis appeals.
Davis urges three assignments of error:
1) the trial court erred in admitting the results of the court-ordered blood test into evidence;
2) the trial court erred in denying Davis' motion to dismiss following the end of DHHR's case;
3) the trial court erred in ruling that DHHR proved paternity by a preponderance of the evidence.
Based on our finding that assignment of error No. 1 has merit, we pretermit any discussion on assignments of error Nos. 2 and 3.

ADMISSIBILITY OF BLOOD TEST RESULTS
On May 6, 1986, the court ordered all the parties to submit to a blood test on July 22, 1986, at the Medical Lab of Baton Rouge. The test results show a 99.81% probability of paternity. DHHR attempted to introduce the results of the blood test at trial by having Laura Jo and Davis identify the report containing the results; the report was introduced by the trial court subject to Davis' objection that the proper foundation for its introduction had not been laid. The trial judge in his reasons for judgment stated that the blood test results were one factor in his finding that Davis is the child's father; the other factors were the testimony of Laura Jo; Cynthia Davis, defendant's ex-wife; and Mrs. Peggy Peavey, Laura Jo's mother.
Davis contends that the blood test results are inadmissable because the procedures under the Uniform Act on Blood Tests to Determine Paternity, LSA-R.S. 9:396 et seq., were not followed. According to Davis, there was no proper foundation for introducing the lab report into evidence; the experts who actually tested the blood were not appointed by the court; the chain of custody for the test was not shown; no notice that the blood test report was filed into the suit record was given; and the blood test report was not filed into the suit record until the date of trial.
The report containing the results of the blood test shows that all the parties appeared at the Medical Laboratory of Baton Rouge to have the blood tests taken on July 22, 1986, as ordered by the court. Both Laura Jo, in her own behalf as well as her child's, and Davis signed a document which stated, in part, that they were submitting to blood tests for paternity determination. Their signatures were witnessed by Terri Watts, the laboratory technician. On the document, the laboratory technician certified that she took the blood samples from all the parties on July 22, 1986. Furthermore, from photographs taken of all *577 the parties the technician certified that she had drawn the blood from the persons appearing in the photographs. A second laboratory technician signed the document, stating that she had witnessed the specimen collection. Finally, the parties were also identified by their social security numbers. We note that on the top of the two page form document, of which the first page was filled out mainly at the Medical Laboratory of Baton Rouge, the name and address of Roche Biomedical Laboratories, Inc. appears. Roche is located in Burlington, North Carolina.
On the first page, under a section labelled "Chain of Custody," Terri Watts signed her name showing that she packaged the blood specimens on July 22, 1986, at 1:00 p.m. Below that is a section completed by the personnel at the Roche lab showing that the box containing the specimens was received; that the box was taped; that the tape was intact; that the tape was initialled by Terri Watts; that there were no signs of tampering; that the box was received in the Burlington Laboratory Paternity Department by D. Wilson on July 24, 1986, at 12:46 a.m.; and that there was no evidence that the package had been opened.
The second page, which shows the testing results, contains a notarized certificate signed on July 30, 1986, by Ronald Barwick, Ph.D., Associate Director, which says that the testing was conducted in accordance with procedures published by the American Society for Histocompatibility and Immunogenetics and the American Association of Blood Banks and that the test results were determined independently by Dr. Barwick and are correct as reported.
Pertinent statutes under the Uniform Act on Blood Tests to Determine Paternity are as follows:
§ 9:397. Selection of expert
The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.
§ 9:397.2. Chain of custody of blood samples
The chain of custody of blood samples taken under this Part may be established by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity.
§ 9:397.3. Admissibility and effect of test results
A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The tests and the *578 testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.
Davis' initial complaint with the trial judge's admission of the report containing the blood test results is that the expert testing the blood did not identify the report. LSA-R.S. 9:397 has been recently interpreted by this court in Patterson v. Johnson, 509 So.2d 35 (La.App. 1st Cir. 1987). According to Patterson, the expert who tests the blood no longer needs to be called as a witness to testify as to his findings. Patterson, 509 So.2d at 37. If a defendant wishes the expert to testify, he must subpoena him or conduct his deposition. Patterson, 509 So.2d at 38. Furthermore, under LSA-R.S. 9:397.3 B, it is clear that the certified report can be admitted at trial as prima facie proof of its contents, without the need for the expert making the findings to testify; a defendant then has the right to summon and examine the expert making the original of the report as a witness under cross-examination.
Davis' second dispute with the trial court's admission of the report of blood test results is that the expert appointed to test the blood was Biomedical Laboratory of Louisiana; the tests were actually performed by Roche.[1] We find this contention to be hypertechnical. While LSA-R.S. 9:397 requires the blood test to be conducted by an expert who is appointed by the court and is qualified to test blood for paternity, we feel the legislature was mainly concerned with the need for the tests to be conducted by an impartial, qualified expert. There is no indication that Roche Biomedical did not meet these standards. Also, where blood testing is performed by laboratories which may employ many people, it would be impossible for the trial court to say which person working for the lab was to test the blood. As was the case in this instance, the lab which was appointed to conduct the blood testing did actually take the specimens; that they would send the specimens to another lab for the actual testing could not possibly have been known by the trial court in this case. Finally, we note that many labs send specimens to different labs where extensive testing is involved. For these reasons, Davis' contention has no merit.
Davis further contends that DHHR failed to establish a chain of custody. We find that the report itself with the notarized statement of Dr. Barwick, the section dealing with chain of custody, and all of the other statements contained in the report as detailed earlier in this opinion, meets the chain of custody requirements of LSA-R.S. 9:397.2. We further note that in Patterson, the court found that a report prepared by Roche Biomedical Laboratories, Inc., which was made under the same circumstances, and which followed the same procedures as the report before this court, met the requirements of LSA-R.S. 9:397.2. Patterson, 509 So.2d at 38.
The report containing the blood test results was not filed in the suit record until the day of trial, in conflict with the requirements of LSA-R.S. 9:397.3, which requires the report to be filed into the suit record and for the parties to be given thirty days to challenge the testing procedures. The challenges which may be raised within the thirty days after the party receives notice that the report containing the blood test results has been filed into the record only deal with the testing procedures, and not with the implications of the test results themselves. If the party against whom the test is to be used raises no procedural challenges or if his challenges are dismissed by the trial court, the blood test report is admitted in evidence at trial as prima facie proof of its contents.
The importance of the blood test results is such that a party against whom they are being used should have the opportunity to challenge the testing procedure. More importantly,
[a] careful reading of the Uniform Act on Blood Tests to Determine Paternity, enacted *579 as R.S. 9:396 et seq., leads us to the conclusion our legislature intended, due to the nature of the subject matter, to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability. At the beginning of the first section of the Act is the familiar proviso negating any other provision of law to the contrary. McGowan v. Poche, 393 So.2d 278, 280 (La.App. 1st Cir.1980).
Furthermore, as we earlier discussed, it is the party against whom the blood test is to be used who must summon and examine those performing the blood test if he desires that they testify. To avail the party of that opportunity, he must have access to the blood test report in order to determine whom to subpoena or to depose. Thus, we find that the trial court erred in admitting the blood test report into evidence where the procedure set forth in LSA-R.S. 9:397.3filing the report into the record, noticing the defendant at the filing, and allowing the defendant thirty days to challenge the testing procedurewere not followed.
For these reasons, we feel it appropriate to remand this case to the trial court in order that defendant will be afforded the opportunity to challenge the testing procedure within thirty days following receipt or service of notice that the report has been filed into the record. LSA-R.S. 9:397.3. The trial court is to follow the procedures set forth in LSA-R.S. 9:397.3. One of the conditions of this remand is that the only additional testimony and evidence which may be taken in this matter is that which concerns the blood test as set forth under LSA-R.S. 9:397.3(B), (C), and (D). After the procedures set forth in LSA-R.S. 9:397.3 are followed by the trial court, the trial court is to render a decision de novo based on the testimony of the witnesses previously heard by the trial court and the properly admitted blood test results.
For the foregoing reasons, we remand this matter to the trial court for proceedings consistent with this opinion. Costs to be assessed against appellee.
REVERSED IN PART AND REMANDED.
NOTES
[1] We note that an examination of the record in the Patterson case shows that the judge appointed Biomedical Laboratory of Louisiana to perform the tests, but that the tests were actually performed by Roche.