567 So.2d 758 (1990)
STATE of Louisiana, Plaintiff,
v.
Steve STRINGER, Defendant.
No. 21799-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*760 John C. Blake, Dist. Atty. and Chris L. Bowman, Asst. Dist. Atty., Jonesboro, for plaintiff-appellee.
William H. Baker, Jonesboro, for defendant-appellant.
Before MARVIN and HIGHTOWER, JJ., and JASPER E. JONES, J. Pro Tem.
HIGHTOWER, Judge.
Defendant, Steve Stringer, appeals a judgment declaring him to be the natural father of a minor and ordering that he pay support to the Department of Social Services, State of Louisiana, for the use and benefit of the child. We affirm.

BACKGROUND
Pamela Ramsey ("Pam") began dating defendant shortly after her sixteenth birthday in 1981. On July 20, 1982, they obtained a marriage license but thereafter never exchanged wedding vows. According to defendant, he declined such rites after Pam told him of being pregnant and that she had "slept with" three other men. Approximately six months later, she gave birth, out of wedlock, to a boy. Defendant later married another individual.
At trial, Pam testified that defendant is the father of her child, and also that he was the only individual with whom she had sexual relations prior to the termination of the marriage plans. In late June 1982, she advised him of the pregnancy and, after some initial hesitancy on his part, they secured the matrimonial license. During her testimony, she consistently denied any admissions of earlier sexual acts with other men.
Defendant disclaimed paternity, insisting he never had a sexual encounter with Pam. This, however, is at variance with a statement he made on July 27, 1987, during an interview with Tilda Walsworth, a state-employed support enforcement officer who supervised the Stringer case. Her notes, submitted into evidence by him, reflect his admission of one act of sexual intercourse with the mother, although he claimed that liaison occurred about three months prior to the time of conception. In testimony, defendant admitted dating Pam during or near the time she became pregnant. He also acknowledged that he apparently was not sterile.
After Pam obtained Aid to Families with Dependent Children (AFDC) benefits on behalf of her child, the Department of Health and Human Resources (DHHR) sought to establish, through voluntary blood testing, whether defendant was the father. Unable to secure his cooperation, DHHR instituted an LSA-R.S. 46:236.1(F) paternity-support action and, in the course of that proceeding, secured an order compelling defendant to submit to blood tests pursuant to LSA-R.S. 9:396. In compliance with court appointment, technicians at Roche BioMedical Laboratories ("Roche") subsequently performed various tests on the blood of the mother, the youngster, and defendant, under the supervision of Dr. Lloyd Osborne. *761 Results reflected a combined paternity index of 265 and a 99.62 percent probability of Stringer being the biological father.
Pam's mother testified that she never saw her daughter, who lived with her when the pregnancy commenced, date anyone other than defendant during that time. She further said defendant later told her that he was sorry he had "messed up" Pam's life, a statement he claims he only made to, and about, his wife.
Written reasons for judgment noted that defendant and Pam dated at the time of conception, and that she said she only had sexual relations with defendant, while he denied any acts of intercourse and contended she had engaged in such conduct with others. The trier of fact discerned no proof that defendant had acknowledged the child. However, finding the blood test results persuasive, the trial court held defendant to be the natural father and ordered him to pay $150 per month to the Department of Social Services[1] for the use and benefit of the child.

Exceptions
In response to the action instituted by DHHR, defendant asserted exceptions of procedural capacity and no cause or right of action, arguing that when Pam applied for public assistance she did not have legal custody of the child. Maintaining that the trial court erred in overruling those exceptions, defendant points to the fact that the mother's parents secured temporary custody of the infant on August 30, 1983, by virtue of an ex parte order in a civil proceeding they initiated against her.
Muriel Ramsey, the infant's grandmother and a party to that earlier matter, testified that before an order of permanent custody could be procured her daughter returned home and assumed full responsibility for raising her child. Thereafter, Pam applied for AFDC support, which was awarded. At the time of the present trial, such aid continued to be paid each month.
In a case where an AFDC grant has been made, the state possesses a separate cause of action to establish paternity and obtain a judgment of child support against the person primarily responsible for that support. LSA-R.S. 46:236.1(F). Moore v. Braddock, 391 So.2d 908 (La.App. 2d Cir. 1980). There is no requirement for a custodial parent's written assignment of rights, which is merely one method by which the state may proceed. Collins v. Collins, 359 So.2d 744 (La.App. 4th Cir.1978). Instead, the state's payment of benefits for a minor child forges a separate and distinct cause of action.
Thus, under the facts shown, irrespective of any previous custody orders, DHHR had statutory authority to institute proceedings.

Expert Testimony
Defendant also complains concerning the trial court's acceptance of Dr. Osborne and Roche as, respectively, an expert in applying genetic blood testing to evaluate paternity and a laboratory qualified to conduct blood testing for such purposes. Defendant challenges Dr. Osborne's lack of formal education in the specific field of genetics, as well as his failure to perform any of the tests the results of which he relied upon in forming his opinion. Defendant similarly asserts the establishment of an inadequate foundation to qualify the laboratory.
A trial court has great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. State Through Department of Health v. Rice, 482 So.2d 873 (La.App. 2d Cir.1986); Friday's Plumbing & Heating Co., Inc. v. Byers, 415 So.2d 256 (La.App. 2d Cir.1982). Experience alone is sufficient to qualify a person as an expert. Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2d Cir.1986); Hebert v. Broussard, 450 So.2d 1038 (La.App. 1st Cir.1984). Absent a clear abuse of the trial court's discretion in accepting a witness as an expert, *762 appellate courts will not reject the testimony of an expert or find reversible error. Ealy v. Bill Allen Dodge, Inc., 466 So.2d 52 (La.App. 2d Cir.1985); Maxwell v. State, Through Department of Transportation and Development, 391 So.2d 1230 (La.App. 1st Cir.1980), writ denied, 394 So.2d 281 (La.1980).
Dr. Osborne, the associate director in the Department of Paternity Evaluation at Roche, holds a doctorate in immunology. Prior to completing his doctoral studies, he worked as a technician at the Los Angeles County Health Department performing tests utilized in paternity evaluations. He had qualified 82 times previously as an expert in the examination of blood markers to determine paternity, had so qualified in the courts of twenty states including Louisiana, and had evaluated approximately 10,000 cases for genetic patterns during his career.
Testimony indicated that Roche conducted some 29,000 blood testing paternity evaluations in 1988, a greater number than in any previous year, and stood accredited by the College of American Pathologists, the American Society of History Compatibility and Immunogenetics, and a parentage testing committee of the American Association of Blood Banks. The facility had previously qualified as a laboratory to conduct paternity evaluations in twenty states including Louisiana.
The Uniform Act on Blood Tests to Determine Paternity, LSA-R.S. 9:396, et seq., authorizes the introduction of blood test results without the necessity of the personal appearance and live testimony of an expert. LSA-R.S. 9:397.3; State in Interest of Braden v. Nash, 550 So.2d 866 (La.App. 2d Cir.1989); State in Interest of Bankston v. Davis, 521 So.2d 575 (La.App. 1st Cir.1988). Should an expert testify, however, he need not be the individual who actually drew the blood, performed the tests, or compiled the statistics for comparison. He may rely on data compiled by other technicians. LSA-C.E. Art. 703; Braden, supra; Schwab for and On Behalf of Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.1985), writ denied, 464 So.2d 1386 (La.1985), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985).
Obviously, considering the experience and training of the witness and the qualifications of the facility, along with the law regarding the introduction of test results, no abuse of the trial court's discretion occurred in its acceptance of Dr. Osborne and Roche.

MERITS
Defendant finally argues that the state did not sustain its burden of proof to establish him as the father of the child. We disagree.
When an individual alleged to be the parent of an illegitimate is alive, the burden of proving paternity is by a preponderance of the evidence. LSA-C.C. Art. 209; Williams v. Olden, 561 So.2d 871 (La.App. 2d Cir.1990); Braden, supra; State v. Rice, supra; Bailey v. Douglas, 478 So.2d 172 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 365 (La.1985). Sufficiency of proof of paternity is a factual question, and determination of that issue will not be disturbed on appeal in the absence of manifest error. Williams v. Olden, supra; Williams v. Williams, 527 So.2d 1068 (La. App. 1st Cir.1988), writ denied, 532 So.2d 153 (La.1988). Although scientific testing alone is not sufficient to prove paternity, it is persuasive and objective evidence that can help establish proof by a preponderance. Braden, supra; Bailey, supra.
Dr. Osborne testified that three main categories of tests were performed on the blood samples submitted: the red cell antigen test, the HLA or human leukocyte antigen test, and the serum proteins and red cell enzymes tests. Quality control measures required that each test be performed twice by two different technicians. Any discrepancy of results prompted at least two more repetitions of the test.
The purpose of the blood analysis is to exclude falsely accused men from paternity. If an alleged father is not excluded, a combined paternity index is calculated to show the odds that he would have passed the disclosed genetic markers to a *763 particular child. Here, based upon the results of all the tests, Dr. Osborne calculated that defendant was 265 times more likely to be the father than a randomly selected North American caucasian male. That figure, the combined paternity index, converted into a 99.62 percent probability of paternity. These calculations, together with assumptions of the alleged father's fertility and of his having access to the mother during the probable period of conception, formed the basis for the expert's conclusion that it was extremely likely that defendant procreated the child.
Defendant impugns the test results on two grounds. First, late in the trial he announced that it was a "known fact" in his family that a great grandmother or a great, great grandmother, whose name he did not know and whom he has never met, was black. If the assertion were true, Dr. Osborne admitted his calculations would be incorrect for failure to compute the probability of paternity based on mixed race.
Hearsay evidence, of course, is admissible in certain instances on matters of personal or family history.[2] Failing to specify the author of his assertion, defendant instead seemingly sought to rely on reputation evidence about his ancestry. "Reputation" has been defined as "the status resulting from the notoriety produced by cumulation of ... facts tending to prove the quality that a person enjoys in a family and in society...." IMC Exploration Co. v. Henderson, 419 So.2d 490, 506 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1149, 1150 (1982). To insure trustworthiness, that reputation must have arisen prior to the controversy. LSA-C.E. Art. 803(19); cf. Succession of Anderson, 176 La. 66, 145 So. 270 (1932).
Defendant presented, though, no testimony by others showing his family "reputation." No relatives or friends substantiated his declaration by providing facts supporting the alleged common knowledge. His assertion, standing alone and in light of an adequate motive opposing verity, proves little. We find no error in the court accepting the findings of Dr. Osborne, notwithstanding his reliance on the fact that Steve Stringer is caucasian, the race defendant considers himself to be.
Defendant also calls into question the failure of the lab technicians to conduct additional testing which, it is contended, would have eliminated him as the possible father. Dr. Osborne testified that if, after performing the three main groups of tests, there is a compelling probability of paternity, then no more testing is performed because historically the other procedures have never changed the calculations when there existed a 99 percent probability of paternity. No testimony contradicted the expert's explanation; the trial court could accept his conclusions and assign appropriate weight to the test results, Braden, supra.

CONCLUSION
Considering the evidence as a whole, the lower court did not commit manifest error in determining that paternity had been proven by a preponderance of the evidence. Accordingly, judgment is affirmed at the cost of appellant.
AFFIRMED.
*764 [EDITOR'S NOTE:]
NOTES
[1] The Department of Social Services, DHHR's successor department as concerns public assistance for dependent children, became a substituted party without any necessity for amended pleadings. La. Acts 1988 (First Ex. Session), No. 1, §§ 2, 7.
[2] Such proof may consist of reputation evidence, LSA-C.E. Art. 803(19), or earlier statements by an unavailable declarant concerning his own or a relative's family history or descent, commonly referred to as pedigree, LSA-C.E. Art. 804(B)(4).