597 So.2d 450 (1991)
Cynthia Ann DIDIER
v.
Charles FASOLA.
No. CA 89 2094.
Court of Appeal of Louisiana, First Circuit.
August 8, 1991.
Donna W. Lee, Baton Rouge, for plaintiff-appellee Cynthia Ann Didier.
Karen D. Downs, Baton Rouge, for defendant-appellant Charles Fasola.
Anne F. Benoit, Asst. Atty. Gen., New Orleans, for the State.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
*451 COVINGTON, Chief Judge.
Cynthia Ann Didier, plaintiff-appellee, brought suit for custody of and child support for the minor child, Zachary Alexander Didier. In this suit, she alleged that Charles Fasola, defendant-appellant, was the father of Zachary.
In response, appellant filed an dilatory exception raising the objection of prematurity and a peremptory exception raising the objection of no right of action, arguing he had not been adjudicated the father of the child nor had he acknowledged or legitimated the child.
He also filed peremptory and dilatory exceptions raising the objections of no right of action and lack of procedural capacity, asserting appellee had not qualified as the child's legal representative. The trial court sustained Mr. Fasola's exception raising the objection of lack of procedural capacity and granted appellee sixty (60) days to amend her petition. Ms. Didier was appointed and confirmed the natural tutrix of her minor son, Zachary, and amended her petition to assert, as tutrix of the minor child, the action of paternity against Mr. Fasola. She also requested that the court order the defendant to submit to blood tests jointly with her and the child. Mr. Fasola then filed a rule for security of costs which was granted. Although the record does not clearly indicate when Ms. Didier provided security, Mr. Fasola answered, denying paternity of the minor child.
Pursuant to LSA-R.S. 9:396, blood tests were ordered for Ms. Didier, Zachary and Mr. Fasola. The tests were performed by Roche Biomedical Laboratories and a test report, prepared from the results and conclusions of the tests, was filed with the Clerk of Court on August 18, 1988. Then the defendant filed an objection to the testing procedures used in the ordered tests. Prior to trial on the merits, appellant filed a "Motion in Limine," objecting to the introduction of the blood test report. Mr. Fasola argued LSA-R.S. 9:396 was unconstitutional and urged the court to prohibit the introduction of the report into evidence at the trial on the merits. On the first day of trial, upon defendant's objection to the introduction of the results, the court determined the requirements of LSA-R.S. 9:396 et seq. had not been complied with and held the report would not be admitted as prima facie proof of its contents.
The plaintiff then filed a motion to seek supervisory writs. This court, after review of the trial court's decision to refuse to admit the results, denied plaintiff's writ, holding the trial judge correct. In addition, we held the plaintiff should have been allowed to obtain the necessary affidavit to satisfy the statutory requirement and we ordered Ms. Didier be given that opportunity.
After a hearing on the motion in limine filed by the defendant, the judge denied the motion. The trial on the merits resumed, and after establishment of the chain of custody of the blood samples, the results of the tests were admitted into evidence. Judgment was rendered decreeing Charles Fasola to be the natural father of the minor child, Zachary Didier. Appellee was awarded the care and custody of the child.
Mr. Fasola appeals from the judgment declaring him to be the father of the minor child and makes two assignments of error: (1) the trial court was manifestly erroneous in failing to declare the blood testing statutes, LSA-R.S. 9:396 et seq., unconstitutional, and (2) the trial court erred in holding that appellant is the natural father of the minor child, as appellee failed to prove by a preponderance of the evidence that appellant was in fact the child's natural father. For the following reasons, we affirm.

CONSTITUTIONALITY OF STATUTE
The Uniform Act on Blood Tests to Determine Paternity was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1952. Louisiana adopted the act in its entirety in 1972 in Acts 1972, No. 521. With the adoption of the Uniform Act on Blood Tests to Determine Paternity, the "legislature intended ... to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability.... *452 The thrust of the statute is to make available scientific evidence, adduced through medical experts appointed by the court and called to testify by the court." McGowan v. Poche, 393 So.2d 278 (La.App. 1 Cir.1980).
LSA-R.S. 9:396 et seq. then provided, in pertinent part:
§ 396. Authority for tests; ex parte orders; use of results
A. Notwithstanding any other provisions of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
§ 397. Selection of expert
The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.
§ 397.1. Compensation of expert witnesses and recovery of testing costs
A. The costs of the blood tests conducted by the expert witness appointed by the court shall be fixed at a reasonable amount. It shall be paid by the petitioner. The compensation of each expert witness appointed by the court and called by a party shall be fixed at a reasonable amount. It shall be paid by the party who calls the expert. However, if the alleged father acknowledges paternity or is adjudged to be the father by the court, he shall pay the costs of the blood tests and compensation of the expert witness appointed by the court, which shall be taxed as costs of court. The fee of an expert witness called by a party but not appointed by the court shall be paid by the party calling him but may not be taxed as costs in the action.
B. If the state, a political subdivision of the state, or the petitioner pays the initial costs of testing under this Part in a paternity action, the state, political subdivision, or petitioner may recover those costs from an individual found to be the father of the child in the action. The court shall determine the manner in which the reimbursement for the costs shall be made.
§ 397.2. Chain of custody of blood samples
The chain of custody of blood samples taken under this Part may be established by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity.
§ 397.3. Admissibility and effect of tests results
A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, *453 provided the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.
The defendant argues that the statute does not pass constitutional muster in many areas and specifically lists nine areas which he asserts are deficient. These include challenges to the mechanics of performing the tests, including who shall draw the blood and their qualifications and the actual tests to be performed on the blood samples. Mr. Fasola also questions the discretion allowed the judge if a procedural error is made.
These "procedural" challenges to the technical mechanics of the actual blood tests are answered by the clear intent and the express language of the statute's provisions. The title of the act includes the following language:
An Act to provide for the use of blood tests in civil actions to determine paternity; to establish a procedure for the qualification and compensation of expert witnesses; to provide for the effect of blood tests on the presumption of legitimacy and paternity, and otherwise to provide with respect thereto.
The act is intended to provide for the use of blood tests. The legislature did not intend to establish or predetermine a particular test to be used, only for the use of some tests. By not identifying a particular test, the legislature does not limit the blood tests to ones existing at the time the statute was enacted. The intent was to use the most effective scientific methods available at the time the testing procedure is to be done. The legislature's omission of fixed directives recognizes the discretion of the court to identify and utilize the most accurate and specific tests and methods available at any given time.
Likewise, the lack of listed qualifications or requirements for the experts utilized by the court recognizes the discretion of the court. The legislature was mainly concerned with the need for the tests to be conducted by an impartial, qualified expert. State in the Interest of Bankston v. Davis, 521 So.2d 575 (La.App. 1 Cir.1988). The statute mandates that the tests be conducted by experts appointed by the court who are qualified as examiners of blood samples. It also mandates that the number and the qualifications of such experts shall be determined by the court. The trial judge, through his regular course of trial activities, is acquainted and familiar with qualified examiners of blood samples. To place the appointment of the experts within the discretion of the judge recognizes the judge's greater ability to select the most qualified and impartial expert for the particular case before the court.
The deference to the judge to order additional tests if a procedural error is made, again recognizes the trier's more favored position to identify and correct any error in the testing procedure which is selected for use in a particular case. The trial judge is alert to the development of any problems or the recognition of any error by his active involvement in the order for and performance of tests and the receipt of results from those tests.
An additional challenge by the defendant-appellant questions the statute's lack of a hearing to determine whether a court should order a defendant in a paternity proceeding to submit to blood testing. The statutory provision authorizing the court to order blood testing limits the court's authority to "any civil action in which paternity is a relevant fact, or in an action en *454 desaveu [in disavowal[1].]" For the trial court to be authorized to order tests, the action before the court must be one "in which paternity is a relevant fact." The value of blood grouping tests in paternity cases is well established. The United States Supreme Court addressed the use of blood tests in Little v. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981). In that case the Court declared the required blood grouping tests be made available to indigent defendants in view of the unique quality of these tests as a source of evidence. The Court stated "there is now ... practically universal and unanimous judicial willingness to give decisive and controlling evidentiary weight to a blood test exclusion of paternity." S. Schatkin, Disputed Paternity Proceedings § 9.13 (1975). Little, 101 S.Ct. at 2206.
The use of blood tests results, however, are not dispositive. The results of tests are just one factor which is used by the court in the determination of paternity. The results must be weighed along with all other evidence presented at trial. O'Bannon v. Azar, 435 So.2d 1144 (La.App. 4 Cir.1983) writ denied, 441 So.2d 749 (1983), cert. denied, 466 U.S. 928, 104 S.Ct. 1710, 80 L.Ed.2d 183 (1984). State v. Wiggins, 409 So.2d 1264 (La.App. 2 Cir.1982). The defendant has the opportunity, at the trial on the merits, to object to the use of the results, challenge the introduction of the results, and introduce contradictory evidence.
This method for the use of blood grouping test results provides the parties, as well as the court, with a consistent source of reliable information. Technology can now provide definitive, exclusionary data, useful in determining the probability of paternity. The importance of such accurate and obtainable information is obvious.[2] These assignments are without merit.
In addition, Mr. Fasola challenges the use of blood tests based on Fourth and Fifth Amendment grounds, asserting a violation of the due process and right to privacy provisions of the United States Constitution[3]. Statutes are presumed constitutional. Bristol Steel and Iron Works, Inc. v. State, Department of Transportation and Development, 507 So.2d 1233 (La.1987). The party alleging unconstitutionality bears the burden of proof. Moore v. Roemer, 567 So.2d 75 (La.1990).
The Fourth Amendment provides individuals with protection from unreasonable *455 searches and seizures. Although the Supreme Court, in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held the drawing of blood for DWI blood testing does not infringe upon Fourth Amendment rights, the different circumstances presented by the instant case require application of these considerations to the statute under review. The Court in Schmerber directs our inquiry, as follows:
... the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.
86 S.Ct. at 1834.
Our scrutiny, therefore, is upon the reasonableness of blood testing in cases in which paternity is a relevant factor and the manner in which the tests are performed.
When, in a suit before the court, paternity is an issue, the use of blood tests provides the court, and all parties, with "a wholesome aid in the quest for truth.... Their reliability as an indicator of the truth has been fully established." Little, 101 S.Ct. at 2207. The ability of blood grouping tests to exonerate innocent putative fathers has been confirmed by a joint 1976 American Medical Association and American Bar Association report. Id. at 2206. In addition, the pervasive "best interest of the child" standard[4] encourages the use of the most reliable and accurate means for identifying the truth in contested paternity suits. The relationships that are formed by the adjudication of paternity, whether limited to financial support only or extended to other areas of life, demand the use of accurate and reliable information. Blood grouping tests supply the courts and the parties with just such information. The intrusion to a party to undergo testing is justified in the given circumstances of paternity cases.
Secondly, we are satisfied that the tests are to be performed in a reasonable manner. The statute's provisions state that "[T]he tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples ..." The court is to determine the qualifications of the experts; however, it does not have the discretion of appointing someone who is not considered by it to be an expert examiner of blood samples. The statute also requires that the testing shall be by appropriate procedures. The use of the word "shall" is mandatory. LSA-R.S. 1:3. The testing ordered by the court or requested by a party must be by appropriate procedures. The statute does not attempt to legislate the environment necessary for the drawing of the blood samples or the specific conditions required for performing the tests; however, the statute does allow the court to only order the drawing of blood for testing and directs the court to have the determination of inherited characteristics made by appropriate procedures. In the ever-changing, highly technical, medical world, the legislature is not in a position to dictate a required environment for testing or to dictate specific tests to be performed. They did provide, in the statute, a procedure by which the courts or involved parties may receive accurate and reliable, scientific information, obtained in a reasonable manner.
The defendant also argues the Fifth Amendment provides a "zone of privacy" which a person may not be forced to surrender, citing Justice Douglas' dissent in Schmerber. As determined in Schmerber, blood testing is a limited, permissible form of intrusion into one's privacy and body. The state's interest in establishing paternity through reliable, scientific methods outweighs the alleged father's right to privacy against intrusions. The state has a substantial interest in determining paternity to keep children out of the welfare system. In addition, the determination of paternity allows for the proper recognition of succession rights. The defendant has not offered convincing support for prohibiting this limited form of invasion. Thus, we hold these statutes do not violate defendant's rights under the U.S. Constitution. We turn now *456 to the second issue before us, the sufficiency of the evidence.

SUFFICIENCY OF THE EVIDENCE
In his second assignment of error, the defendant argues that the plaintiff failed to sustain her burden of proof and failed to establish by a preponderance of the evidence that he is in fact the natural father of the minor child, Zachary Alexander Didier.
The sufficiency of the evidence requirement was reiterated by this court in a recent case. In Williams v. Williams, 527 So.2d 1068 (La.App. 1 Cir.), writ denied, 532 So.2d 153 (La.1988), this court stated:
Where the alleged father is alive, the plaintiff must prove paternity by a preponderance of the evidence. La.Civ.Code art. 209 A. The determination of whether there has been sufficient proof of descent from an alleged parent is a question of fact. The trial court's determination of factual and credibility issues should not be disturbed in the absence of manifest error. (Citations omitted.)
527 So.2d at 1069.
In the instant case, based on the evidence presented by the plaintiff, the trial court judge chose to believe the plaintiff, and held the defendant to be the natural father of the minor child. At the trial, Cynthia Didier testified to a sexual relationship with Mr. Fasola during the time of conception. The defendant also testified to this sexual relationship. Mr. Fasola's argument that the testimony concerning plaintiff's October 3-5, 1986 trip to Florida with a friend discredits plaintiff's testimony is without merit. Defendant failed to prove that the plaintiff engaged in sexual relations with anyone during the October trip, and simple arithmetic would indicate conception of a child with a birth date of August 2, 1987, did not occur during the first five days of October, 1986. The lack of proof by defendant of any other sexual relationships by the plaintiff during the time of conception is persuasive.
In addition, the blood tests results, admitted into evidence after protracted challenges, indicate a 98.93% probability of paternity. Based on this factor, combined with the admitted sexual relationship between the plaintiff and the defendant during the time of conception, the failure by defendant to offer evidence that the test results were incorrect, and the absence of proof that the plaintiff engaged in sexual relations with anyone else during the time of conception, we cannot say that the trial court was manifestly erroneous.
The judgment of the trial court is affirmed. All costs of this appeal to be paid by defendant-appellant.
AFFIRMED.
NOTES
[1] For a general discussion on the action en desaveu, see Comments, Presumption of Legitimacy and the "Action en Desaveu" (Part I), 13 La.L.Rev. 587 (1953), and Comments, Presumption of Legitimacy and the "Action en Desaveu" (Part II), 14 La.L.Rev. 401 (1954). For a discussion on the application of LSA-R.S. 3:396 in a disavowal action, see Comment, The Uniform Act on Blood Tests: Disavowal and Divorce, 33 La.L.Rev. 646 (1973).
[2] The application of blood tests to the issue of paternity results from certain properties of the human blood groups and types: (a) the blood group and type of any individual can be determined at birth or shortly thereafter; (b) the blood group and type of every individual remain constant throughout life; and (c) the blood groups and types are inherited in accordance with Mendel's laws. [S. Schatkin, Disputed Paternity Proceedings] § 5.03. If the blood groups and types of the mother and child are known, the possible and impossible blood groups and types of the true father can be determined under the rules of inheritance. For example, a group AB child cannot have a group O parent, but can have a group A, B, or AB parent. Similarly, a child cannot be type M unless one or both parents are type M, and the factor rh' cannot appear in the blood of a child unless present in the blood of one or both parents. Id. §§ 5.03 and 6.02. Since millions of men belong to the possible groups and types, a blood grouping test cannot conclusively establish paternity. However, it can demonstrate nonpaternity, such as where the alleged father belongs to group O and the child is group AB. It is a negative rather than an affirmative test with the potential to scientifically exclude the paternity of a falsely accused putative father.

Little, 101 S.Ct. at 2206.
[3] The Fourth Circuit, in Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4 Cir.), writ denied, 448 So.2d 112 (La.), application for reconsideration not considered, 450 So.2d 356 (La.1984), recently addressed another constitutional challenge to LSA-R.S. 9:396 et seq. In that case, the appellant argued the statute was unconstitutionally vague, asserting a lack of definitions to such terms as "blood tests," "experts," and "blood types." The Court of Appeal held "men of common intelligence can clearly understand the meanings of these terms" and overruled the defendant's plea.
[4] See La.Civil Code Article 131 and LSA-C.J.P. art. 85.