611 So.2d 769 (1992)
STATE of Louisiana Through the DEPARTMENT OF SOCIAL SERVICES, OFFICE OF ELIGIBILITY DETERMINATIONS in the Interest of, Bryson CRAWFORD, Minor Child of Karen Crawford
v.
Byron GIBSON, Sr.
No. 92-CA-0120.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
*770 Maria R. Treffinger, Robbins Graham, Dept. of Social Services, New Orleans, for appellee.
Jesse Clarence Brown, New Orleans, for appellant.
Before BYRNES, CIACCIO and LANDRIEU, JJ.
LANDRIEU, Judge.
Defendant, Byron Gibson, Sr., appeals the judgment of the trial court declaring him to be the biological father of the minor child, Bryson Crawford, and ordering him to pay $173 per month in child support. We affirm.

FACTS
Byron Gibson and Karen Crawford lived together on Montegut Street, New Orleans from early 1985 until January 31, 1986. The defendant admits his sexual relationship with Ms. Crawford but asserts the last time they engaged in sexual activity was in December 1985. Bryson Crawford, the minor child, was born on August 29, 1986.
Pursuant to La.Rev.Stat.Ann. § 46:236.1(F) (West Supp.1992), the State of Louisiana through the Department of Social Services (DSS) brought this paternity action on behalf of the child of Karen Crawford.
On December 19, 1990, Karen Crawford, Byron Gibson, and the minor child, Bryson Crawford voluntarily submitted to a blood test at Roche Biomedical Laboratories, Inc. (Roche Lab), Metairie, Louisiana for paternity *771 determination. After the samples were drawn, they were sent to Roche's Lab in Burlington, North Carolina for tests to be performed. The test results showed a 99.99% probability of paternity. Pursuant to La.Rev.Stat.Ann. § 9:397.3,[1] the results of the test and a notice of filing the results were filed in the record on June 11, 1991. In addition to filing both the blood test results and a notice of filing in the record, the record discloses the State provided defense counsel with copies of the blood test and a notice of filing.

DISCUSSION

ADMISSIBILITY OF BLOOD TEST RESULTS
Gibson contends the blood test results are inadmissible because the procedures under the Uniform Act on Blood Tests to Determine Paternity, La.Rev.Stat. Ann. § 9:396 et seq. (West 1991), were not followed. Specifically, defendant argues since no motion for the blood test was filed, the results should not have been admitted into evidence.
Section 9:396, provides, in pertinent part, as follows:
A. Notwithstanding any other provision to the contrary, in any civil action in which paternity is a relevant fact ... the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures....
In State through Dept. of Health and Human Resources v. Davis in the Interest of Laura J. Bankston, 521 So.2d 575 (La. App. 1st Cir.1989) the court held the blood test report was inadmissible because it was filed into the record on the day of trial. Section 9:397.3 requires that the parties be given thirty days from service of the notice of filing of the results into the record in order to allow the defendant the opportunity to challenge the testing procedure. Unlike Davis, the defendant had an opportunity to challenge the testing procedure. On June 25, 1991, the defendant filed a Rule to Show Cause Why Blood Test Results Should Not Be Excluded As Evidence and Motion to Compel Production.
Furthermore, since Gibson voluntarily submitted to blood testing and there was no evidence that the test was defective, it was not necessary for DSS to secure an order. Accordingly, this assignment of error is without merit.

CHAIN OF CUSTODY
By this assignment of error, defendant contends the chain of custody of the blood samples was broken. He complains that the blood test results were filed almost six months after the blood samples were taken, that the results were submitted without the affidavit of the expert who supervised the test, and that the results were introduced into evidence without testimony of an expert called by the State.
La.Rev.Stat.Ann. § 9:397.2 (West 1991) provides:
[t]he chain of custody of blood samples taken under this Part may be established *772 by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of the regularly conducted business activity.
From photographs taken of all the parties, the technician, Cynthia Hull, certified that, on December 19, 1990, she had drawn blood from the persons appearing in the photographs. A second laboratory technician signed the document, stating she had witnessed the specimen collection.
On the report, under a section labelled "Chain of Custody," Cynthia Hull signed her name showing that she packed the blood specimens on December 19, 1990 at 1:47 p.m. Below Hull's signature is a section completed by the personnel at Roche Lab in North Carolina showing the specimen was received; that the box was taped; that the tape was intact; that there were no signs of tampering; and that the box was received in the Burlington Laboratory Paternity Department by Adrian Stokes on December 20, 1990, at 11:40 a.m.
Dr. Lloyd C. Osborne, Associate Director of the Department of Paternity Evaluation at Roche Lab in North Carolina, signed an affidavit on January 16, 1991, which certified that the results were independently reviewed by him, and are correct as reported.
After reviewing the evidence, we find the trial court did not err in determining the chain of custody requirements were followed. Accordingly, this assignment of error is without merit.

BURDEN OF PROOF
Gibson contends the trial court improperly shifted the burden of proof by requiring him to rebut the erroneously admitted blood test results. Once the court determined the tests were properly conducted and admitted them into evidence, the burden of rebutting their findings naturally fell to the defendant.
During the middle of trial, defendant was afforded the opportunity (not required) to hire an expert to review the test results. He retained Dr. Sudhir K. Sinha, an expert in the field of biochemistry. After reviewing the blood test results, Dr. Sinha concluded that it was more probable than not that Gibson is the father of Bryson Crawford. Accordingly, this assignment of error is without merit.

SANCTIONS FOR FAILING TO COMPLY WITH DISCOVERY
Gibson next argues the trial court committed reversible error when it failed to grant his motion for sanctions for the State's failure to answer interrogatories. Interrogatories were served on the State on March 29, 1990. When the State failed to answer the interrogatories, defendant's counsel filed a Rule for the Production of Answers on June 25, 1991. The rule was heard on June 27, 1991, at which time, the court granted a continuance and ordered production of the answers. On August 30, 1991, a Motion for Sanctions for State's refusal to answer interrogatories was filed. A review of the record discloses the motion for sanctions was denied.
Imposing sanctions for the failure of a party to comply with an order compelling discovery is discretionary on the part of the trial court. La.Code Civ.Proc.Ann. art. 1471 (West 1984); Castille v. Melancon, 410 So.2d 1224 (La.App. 3d Cir.1982).
We cannot say the trial court was clearly wrong in denying sanctions. Karen Crawford was deposed informally by defendant's counsel. It was the State's belief that the defendant was satisfied with taking a statement from Ms. Crawford as opposed to her answering interrogatories. A transcription of the taped deposition reveals that the questions in the interrogatories were answered. Accordingly, this assignment of error is without merit.

FAILURE TO COMPLY WITH THE PRE-TRIAL ORDER
Defendant maintains the State failed to obey the May 1, 1991 pre-trial order requiring the parties to disclose all witnesses and file all motions and exceptions by May 9, 1991. Specifically, defendant argues that, since Shirley Crawford *773 was not disclosed on the witness list and the blood test results were not filed by May 9, 1991, her testimony and the blood test results should have been excluded from evidence.
At trial, both plaintiff and defense counsel admitted that they failed to comply with the pre-trial order. Neither party provided the other a witness list. Furthermore, every pleading and motion filed by defendant's counsel of record, including his motion to enroll as counsel, was filed after the deadline.
The pre-trial order controls the subsequent course of action unless modified at trial to prevent manifest injustice. La. Code Civ.Proc.Ann. art. 1551 (West 1990).
Considering the evidence, we cannot say the trial court was clearly erroneous in modifying the pre-trial order. A continuance was granted in order to afford the defense an opportunity to depose the State's new witness, Shirley Crawford, as well as an opportunity to hire an expert to rebut the blood test results. Accordingly this assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
In his last assignment of error, Gibson contends the evidence was insufficient to prove he is the father of Bryson Crawford. Notwithstanding that the blood test results showed a 99.99% probability of paternity, Gibson argues he never acknowledged the child as his own, formally or informally, had no relationship with the mother and child after the birth of Bryson, and the mother dated other men at the time the child was conceived.
At trial, Karen Crawford testified that Bryson was conceived in January 1986. Crawford claims defendant was in the delivery room when the baby was born. Thereafter, he said, "now we have a son, let's make a daughter." She further testified that other than with Gibson, she had never been sexually involved with anyone else.
Shirley Crawford, Bryson's maternal grandmother, testified that Gibson was living with her daughter when she became pregnant. After Bryson was born, Gibson exited the delivery room saying "I have a son." She further testified that while the baby was in the nursery, Gibson visited on a regular basis. Finally, she testified that defendant bought Bryson both clothes and his very first bike.
DSS, on behalf of the minor child, must prove filiation by a preponderance of the evidence. La.Civ.Code Ann. art. 209(A) (West Supp.1992).
Considering the testimony of the witnesses and the blood test results, which show a probability of paternity of 99.99%, we cannot say the trial court was clearly wrong in determining Byron Gibson is the father of Bryson Crawford. Accordingly, this assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.
NOTES
[1] La.Rev.Stat.Ann. § 9:397.3 (West 1991) provides:

A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with the Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty (30) days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.