616 So.2d 259 (1993)
STATE of Louisiana, Plaintiff-Appellant,
v.
Bobby GIVENS, Defendant-Appellee.
No. 24675-JA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*260 Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., Michael A. Jedynak, Asst. Dist. Atty., Monroe, for plaintiff-appellant.
Sir Clyde Lain, II, Monroe, for defendant-appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
In this action by the State of Louisiana to establish paternity pursuant to the provisions of LSA-R.S. 46:236.1, et seq., the trial court found that the state failed to carry its burden of proving the defendant, Bobby Givens, is the natural father of the minor, Stacy Garrett. The state now appeals. We reverse and remand.
The state filed this action against the defendant in December 1991. The defendant filed an answer denying paternity. Previously, in April of 1991, the state obtained a court order directing that blood tests be taken pursuant to the provisions of LSA-R.S. 9:396, et seq. After the blood tests were completed, a written report of the test results was filed into the suit record, and notice and copies were sent via certified mail to the defendant. At trial, the blood test results were introduced into evidence without objection. The test results showed a combined paternity index of 1064 to 1. The results also established the probability of the paternity of the defendant to be 99.91 percent, as compared to an untested, unrelated man of the North American black population.
At trial, the state first called Alma Garrett, the mother of Stacy Garrett, to testify. Ms. Garrett testified that she engaged in sexual intercourse with the defendant one time in the middle of May 1974. Stacy Garrett was born January 29, 1975. Alma Garrett testified that she did not have sexual intercourse with any other man either three months before or after intercourse with the defendant. Ms. Garrett also testified that once a year, for about three years after Stacy was born, the defendant would give her money for support and, on one occasion, helped to buy a bicycle for the child as a Christmas present. Ms. Garrett stated that the Givens family has always treated Stacy as one of their own and that, while growing up, Stacy spent a lot of time at the house of Eunice Garrett, the defendant's sister. On cross-examination, Alma Garrett explained her relationship with a man identified as Rubin Jackson. She stated that she met Jackson after her pregnancy was confirmed and she never engaged in sexual intercourse with him.
The minor, Stacy Garrett, was 17 years old at the time of trial. She testified that both sides of her family told her the defendant was her father. She also stated that she calls the defendant "dad" and that the defendant's family treated her just like she was part of the family. She stated the defendant gave her money on at least two occasions and one time, he came and picked her up and had her spend the night at his house. In addition to the overnight visit, she remembered visiting at the defendant's home three or four other times.
The defendant testified that he was not the father of Stacy Garrett. While he admitted being friends with Alma Garrett in *261 May of 1974, he denied ever having sex with her. The defendant also testified that he had never given Stacy any money or supported her. The defendant testified that Stacy's birth, which occurred before his present marriage, did not create any problems with that marriage. The defendant stated that Stacy has never been to his home, and he has never acknowledged Stacy as his child.
Two of Mr. Givens' sisters, Lula Givens and Eunice Garrett, recalled seeing Alma Garrett with Rubin Jackson at about the time that she became pregnant with Stacy. Both sisters denied that Ms. Garrett informed them she was pregnant with their brother's child.
At the conclusion of trial, the trial court stated:
There was certainly conflicting testimony on every point. The only concrete thing that you could have that would be considered concrete I suppose would be the test result which I must quite frankly admit to you and everybody that I do not understand these reports that states that the probability is 99.91 percent as compared to an untested, unrelated man of the North American black population. I don't know what that means.... I know what the law is as relates to these [blood tests], that they are prima facia evidence and that there must be other preponderating evidence presented with it.
The court then concluded, without further explanation, that the state failed to meet its burden of proof. A judgment was signed in favor of the defendant, denying paternity. The state seeks review of that judgment.
Where, as here, the alleged parent is alive, a plaintiff bears the burden of proving paternity by a preponderance of the evidence. LSA-C.C. Art. 209; State in the Interest of Lawrence v. Harrell, 582 So.2d 940 (La.App.2d Cir.1991); State v. Stringer, 567 So.2d 758 (La.App.2d Cir.1990). The sufficiency of proof of paternity is a question of fact which should not be disturbed on appeal in the absence of manifest error. Hines v. Williams, 567 So.2d 1139 (La.App.2d Cir.1990), writ denied, 571 So.2d 653 (La.1990); State v. Stringer, supra. Although scientific testing alone is insufficient to prove paternity, it is persuasive and objective testimony that can help establish proof by a preponderance of the evidence.
The purpose of the blood analysis is to exclude falsely accused men from paternity. If an alleged father is not excluded, the combined paternity index is calculated to show the odds that he would have passed the disclosed genetic markers to a particular child. State v. Stringer, supra. In the instant case, the blood test results indicate that the defendant cannot be excluded as the biological father of the child. The blood test evaluations further revealed the defendant's paternity index is 1064, or the defendant is 1064 times more likely to be the father of the child than another randomly selected black male. That figure, the combined paternity index, converted into a 99.91 percent probability of paternity. We would note that a paternity index of 1064 is very strong evidence that the defendant is actually the father. Johnson v. Gant, 516 So.2d 1275 (La.App.2d Cir.1987). Where, as here, the scientific testing procedure is not timely challenged, the report shall be admitted into evidence and will constitute prima facie proof as to its contents. LSA-R.S. 9:397.3 B; State in the Interest of Lawrence v. Harrell, supra.
In the instant case, Ms. Garrett was unequivocal in stating that the defendant, Bobby Givens, was the father of Stacy. Ms. Garrett testified that during the period of Stacy's conception, she had a sexual relationship only with the defendant. The defendant was unable to discredit this testimony in any manner. Stacy Garrett testified that both sides of the family told her that the defendant was her father.
Considering the above evidence, along with the significant probability of defendant's paternity, as evidenced by the scientific test results, we must conclude that the trial court was manifestly erroneous in finding the state failed to establish by a preponderance of the evidence that the defendant *262 was the natural father of the minor, Stacy Garrett.
Accordingly, the judgment of the trial court is reversed, and it is hereby ordered, adjudged, and decreed that the defendant, Bobby Givens, is recognized as the natural father of Stacy Garrett. The case is remanded to the trial court for further proceedings. All costs are assessed to the defendant.
REVERSED AND REMANDED.