677 So.2d 1138 (1996)
STATE of Louisiana, Plaintiff-Appellant,
v.
Gregory C. SIMIEN, Defendant-Appellee.
No. 95-1407.
Court of Appeal of Louisiana, Third Circuit.
July 24, 1996.
*1139 Michael Schilling, Asst. Dist. Atty., for State of Louisiana.
Chester R. Cedars, Breaux Bridge, for Gregory C. Simien.
Before THIBODEAUX, SAUNDERS, AMY, PETERS and SULLIVAN, JJ.
*1140 SAUNDERS, Judge.
In this suit to establish paternity and obtain child support, the State of Louisiana appeals the judgment of the trial court in favor of the defendant, Gregory Simien. After prohibiting the introduction of blood tests and certain proffered testimony, the trial court concluded that the State failed to carry its burden of proof and dismissed the State's suit with prejudice. We find that the trial court erred in excluding some of the evidence. Taking this evidence into consideration, we conclude that the evidence overwhelmingly supports the State's allegation that defendant fathered the child. Finally, we remand for further proceedings so that the trial court may determine Simien's child support obligations, if any.

FACTS
Pandora Zenon alleges that defendant, Gregory Simien, is the biological father of Chaz, born on May 13, 1988, and allegedly conceived of a sexual relationship between Simien and Zenon which took place for several weeks between July 1987 and September 1987. Simien denied paternity in his response to the State's petition filed July 23, 1993. In contrast to Zenon's testimony to the effect that the couple had been intimate on about four occasions, Simien contends that his relationship with Zenon was mostly platonic, although the couple did have one romantic liaison during the time they were seeing each other.
On August 4, 1992, the State of Louisiana, Department of Social Services, secured an ex parte order commanding Simien to submit to the drawing of blood samples. Simien submitted to the testing and blood samples were sent to Roche Biomedical Laboratories (Roche Labs) in Burlington, North Carolina. The blood test results, received and filed of record on or about November 23, 1992, provided a paternity index of 1,239 to 1 and a probability of paternity of 99.2%.
On December 16, 1992, Simien filed a motion to challenge the test results and procedures. In his challenge, Simien argued that his Fourth and Fourteenth Amendment rights under the United States Constitution and his Article I, Section 2 rights of the 1974 Louisiana State Constitution were violated, invalidating the ex parte order obtained on August 4, 1992.
After a hearing on May 16, 1994, the trial court granted Simien's motion. It determined that an order compelling an individual to submit to the drawing of blood samples could not be obtained without a contradictory hearing.
The State did not appeal this ruling; rather, on May 27, 1994, the State complied with the constitutional demands of a contradictory hearing, filing a rule to show cause why Simien should not be compelled to submit to a second series of blood testing. The hearing on the rule was held June 27, 1994, following which the trial court concluded that the State had presented a prima facie case and compelled Simien to submit to the blood testing. Simien was ordered to have blood samples drawn July 27, 1994. Fairfax Identity Laboratories (Fairfax Labs) of Fairfax, Virginia, was chosen to conduct the testing. The results of the blood testing were filed on August 16, 1994, and served upon Simien on August 19, 1994.
While other evidentiary issues are raised by the State, this appeal in considerable part concerns the admissibility of the Fairfax blood test results and the testimony of the lab director in charge of the Fairfax lab where the tests were conducted. After excluding the hotly contested Fairfax evidence which facially demonstrated a 99.9% likelihood of Simien's paternity, the trial court concluded that the State failed to carry its burden of proving that Simien was the biological father of Zenon's minor child and dismissed with prejudice the State's petition for paternity.
Specifically, the State asserts as error the trial court's refusal to admit: certain testimony of the Fairfax lab director and blood test expert, Daniel B. Demers, Ph.D.; the written blood test reports from Fairfax Labs; another written blood test report by Roche Labs dated November 16, 1992; and the rebuttal testimony of Charlotte Young.

LAW AND DISCUSSION

EVIDENTIARY ISSUES:
Initially, it should be noted that a trial judge has vast discretion concerning the *1141 admission of evidence. The trial judge's decision to admit or exclude evidence will not be reversed on appeal absent a clear showing that he or she abused that discretion. Lemoine v. Hessmer Nursing Home, 94-836 (La. App. 3 Cir. 3/1/95); 651 So.2d 444.

Dr. Demers' Testimony
The State complains of the trial court's refusal to consider certain portions of the testimony of Dr. Daniel B. Demers, the director of Fairfax Labs. Dr. Demers, who was qualified by the court as an expert in the field of DNA paternity testing, testified extensively about the work that Fairfax Labs did in connection with the Zenon/Simien blood test. The trial judge did not allow Dr. Demers to testify as to the integrity of the specific blood tests conducted by the laboratory in the Zenon/Simien blood samples. In excluding Demers' testimony, the trial judge reasoned:
This gentleman, from the testimony thus far, indicates that he has reviewed reports. He hasthose aren't the words. He's supervised supervisors. I do not believe that that is what is required. You need someone who actually performed the test or supervised someone else while the test [sic] were being performed, someone who was in the room while the testing occurred. That is the kind of individual who can testify as to the results of the test.
Thereafter, the State offered a proffer of Dr. Demers' testimony on that issue.
We conclude that the trial court erred in preventing the State from proving its case by using the full force of Dr. Demer's testimony. La.R.S. 9:397.3 pertains only to the filing of written reports, not to the admissibility of an expert's testimony. See Rigaud v. Deruise, 613 So.2d 761 (La.App. 4 Cir.1993).
The Uniform Act on Blood Tests to Determine Paternity, LSA-R.S. 9:396, et seq., authorizes the introduction of blood test results without the necessity of the personal appearance and live testimony of an expert. LSA-R.S. 9:397.3; State in Interest of Braden v. Nash, 550 So.2d 866 (La. App.2d Cir.1989); State in Interest of Bankston v. Davis, 521 So.2d 575 (La.App. 1st Cir.1988). Should an expert testify, however, he need not be the individual who actually drew the blood, performed the tests, or compiled the statistics for comparison. He may rely on data compiled by other technicians. LSA-C.E. Art. 703; Braden, supra; Schwab for and On Behalf of Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.1985), writ denied, 464 So.2d 1386 (La.1985), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985).
State v. Stringer, 567 So.2d 758, 762 (La. App 2 Cir.1990). (Emphasis ours). If only because Dr. Demers testified in person about customary business practices under his supervision, he was not required to have been in the room while the testing took place. See, e.g., La.Code Evid. arts. 803(6) and 803(7), hearsay exceptions permitting evidence regarding regularly conducted business activities, even where declarant is available.

Lab Results
Next we address whether the trial court improperly excluded from evidence the test results from the Fairfax and Roche labs. La.R.S. 9:397.3(A) provides in pertinent part:
A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record.
This statute provides safeguards which, if followed, authorizes the introduction of blood test results without the necessity of the personal appearance and live testimony of an expert. State v. Stringer, 567 So.2d 758.
The Fairfax Labs' reports contain the following certification made by Dr. Demers:
I, the undersigned, upon being duly sworn, depose and state that I have analyzed the data on the biological specimens from the above-named individuals, that the report containing the results of said analysis has been prepared under my direct supervision, and that the facts and results therein are true and correct.
Simien's position is that the results from Fairfax Labs were not properly certified because Dr. Demers, in fact, did not personally supervise the testing but only reviewed the data that resulted from the testing. Consequently, *1142 Simien argues, the Fairfax lab reports were properly excluded for want of compliance with La.R.S. 9:397.3(A).
The problem with Simien's contention is that it is not supported by either the law or the evidence. Dr. Demers clearly was in charge of the tests in question. As director of the lab in question, Dr. Demers stated that he is responsible for all of the lab's activities, including hiring personnel, processing casework, DNA paternity testing, records maintenance, and data analysis. Contrary to the trial court's conclusion to the contrary, Dr. Demers was not required by La.R.S. 9:397.3(A) to have performed personally every step of the DNA evaluation in order for the tests to have been admissible, as nothing in the provision is intended to prohibit labs from employing technicians to perform some of the minutiae. State v. Stringer, 567 So.2d 758. All that is required is that the technicians do the work under the supervision of the certifying expert, provided that it is demonstrated at trial that the blood samples have not been adulterated or tampered with. Mills v. Mills, 626 So.2d 1230 (La.App. 3 Cir.1993); State Through DSS v. Gibson, 611 So.2d 769 (La.App. 4 Cir.1992).
In this case, the record contains affidavits which show an unbroken chain of custody of the blood specimens from the moment they were drawn and sealed to the moment they were opened for testing by Demers' lab at Fairfax. The affidavits which accompany the record evidence are signed, dated and clocked. As such they are in compliance with La.R.S. 9:397.2:
The chain of custody of blood or tissue samples taken under this Part may be established by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity.

Roche Labs
Next we address the admissibility of the Roche Lab's report. When the State attempted to introduce the Roche Lab's report during the trial on the merits June 16, 1995. Simien objected to the report's introduction on the basis of its allegedly improper certification. His objection was sustained.
The State argues that the trial court erred in refusing to admit the Roche report notwithstanding the fact that the La.R.S. 9:397.3(A) certification was signed by Lloyd Osborne, the same individual previously appointed by the trial court's August 1, 1992, illicit ex parte order directing Simien to provide a blood sample. In the final analysis, we cannot say that the certification was adequate, for the certification signed by Osborne only stated:
Roche Biomedical Laboratories, Inc. is accredited by the Parentage Testing Committee of the American Association of Blood Banks. The results have been reviewed independently by the undersigned and are correct as reported.
Nowhere does the evidence suggest that Osborne in fact performed or supervised the Roche tests, only that he reviewed the results.[1] If only because the record does not more clearly indicate that Osborne had in fact supervised Roche's testing, we cannot say that the trial court abused its discretion in excluding the lab report.

Constitutionality of Statute
Where a case may be decided without addressing constitutional issues, the court is bound to do so. Commercial National Bank v. Scott, 398 So.2d 1127 (La.1981); Cardinal Federal Savings Bank v. Corporate Towers Partners, Ltd., 629 So.2d 462 (La.App. 3 Cir.1993), writ denied, 94-0071 (La. 3/11/94); 634 So.2d 396.
Mr. Simien also complains of the constitutionality of these proceedings. Thus far we have observed that the trial court correctly excluded the Roche test results, but should have permitted the State to introduce Dr. Demers' unfettered testimony and *1143 Fairfax Lab's test results. In this case, we need not determine the constitutionality of the Roche blood test results, having found them not in compliance with La.R.S. 9:397.3(A) and therefore inadmissible. By the same token, we nevertheless must take up the constitutional issue with respect to Demers' testimony and the Fairfax reports in light of our having reversed the trial court's evidentiary rulings as to them.
In the case of In Interest of J.M., 590 So.2d 565 (La.1991), the supreme court of this State determined that while a court order for blood testing is a search and seizure for constitutional purposes, establishing a child's paternity is a legitimate State interest. Because blood tests provide a minimally intrusive method for facilitating a demonstration of paternity, they are permissible provided that the unwavering putative father is provided a contradictory hearing beforehand. In Interest of J.M., 590 So.2d 565; Didier v. Fasola, 597 So.2d 450 (La.App. 1 Cir.1991).
The reasoning of In re J.M. controls this case. After the trial court initially recognized that it had erred in granting the State's ex parte order, leading to Roche's tainted blood tests, the State corrected its error and moved for a contradictory hearing. Because Mr. Simien's rights to this hearing and cross-examination were respected, we can detect no constitutional irregularity.

Exclusion of Witness's Testimony
We now turn to the last evidentiary issue presented on appeal.
On the first day of trial, Simien requested that all witnesses be excluded from the courtroom. Upon resuming the trial on June 16, 1995, the State called Charlotte Young to testify. Simien objected to Young's testimony because she was not listed on the witness list provided by the State. The State informed the trial court that Young was a rebuttal witness whose identity could not be previously disclosed. Thereafter, the State agreed to call Young after the presentation of Simien's case.
After Simien rested his case, the State again attempted to call Young as a witness; however, counsel for Simien advised the court that the State had allowed Young to remain in the courtroom during the entirety of the presentation of the defense. The court refused to permit the State to solicit testimony from Young.
In its fourth assignment of error the State argues that the trial court erred in refusing to permit it to call Mrs. Charlotte Young to the stand. It is within the broad discretion of the trial court to determine whether to exempt a witness from its sequestration order, to determine whether a witness who is not placed under a sequestration order or who violates an order of sequestration may testify, and in allowing rebuttal evidence. State v. Washington, 294 So.2d 794 (La.1974); Anderson v. Rabb, 484 So.2d 196 (La.App. 1 Cir.1986). We find no abuse of discretion on the part of the trial court in excluding the rebuttal testimony of Young. This assignment of error is without merit.

THE MERITS
Finally, the State maintains that we should correct the trial court's conclusion that the State failed to meet its burden of proving that Simien is Chaz's biological father. In light of our disposition of the evidentiary issues, we believe the State's position is well founded. Without the benefit of blood test results or Demers' testimony, the trial court had no alternative but to conclude that the State failed to meet its burden of proof. However, since we conclude that the Fairfax report and Demers testimony should have been received, we are required to make an independent finding of fact on the paternity issue. Rigaud v. Deruise, 613 So.2d 761, 765, citing Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The law that governs this case is that the burden of proving paternity lies with the party seeking to establish paternity, and because the alleged parent in this case is living, the required proof is by a preponderance of the evidence. State v. Stringer, 567 So.2d 758.[2]
*1144 In this case, taking into consideration the Fairfax lab results and Dr. Demers' testimony, the evidence overwhelmingly establishes Mr. Simien's paternity. Dr. Demers's proffered testimony described in detail the unbroken chain of evidence from the moment the samples were taken from the mother, child and putative father, the methods used by Fairfax in its DNA blood sampling, storage and testing, and the results of the lab tests performed by Fairfax: Mr. Simien was more than 99.9% certain to be the father of young Chaz.
Additionally, the child's mother testified that she and Mr. Simien had engaged in intimate relations on at least three occasions during the period in question. While defendant denied the number of occasions, he conceded that the two had been intimate on at least one occasion. This testimony, combined with the Demers' testimony and the Fairfax test results showing a 99.9% likelihood of paternity, leads us to conclude that the State had proven Mr. Simien's paternity by an overwhelming preponderance of the evidence.
In light of its finding that the State did not prove Mr. Simien's paternity, the trial court did not reach the question of whether Chaz is entitled to child support. Accordingly, a remand is in order so that the trial court may take additional evidence on the question.

DECREE
The judgment of the trial court is reversed on the question of Mr. Simien's paternity, and a remand is ordered so that the trial court may consider evidence and determine what level of child support Chaz, if any, might be entitled to.
REVERSED AND RENDERED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, Judge, dissenting.
The trial court was correct.
The trial judge merely exercised his discretion, which the majority recognizes, in excluding certain portions of Dr. Demers' testimony since he attempted to testify about the integrity of testing procedures which he did not personally supervise and of which he had no personal knowledgeexcept from reports written by others in the laboratory.
The majority's reliance on State v. Stringer is misplaced. The issue in Stringer was whether the trial court erred in accepting a particular doctor as an expert in the field of genetic blood testing. In this case, Dr. Demers was accepted as an expert in that field. Stringer, in my view, is not applicable.
The majority correctly quotes the certification made by Dr. Demers. Unquestionably, Dr. Demers simply reviewed the data which resulted from the testing. Accordingly, the certification required by La.R.S. 9:397.3(A) was not in compliance with the statute and was properly excluded by the trial judge. For this same reason, the trial judge properly excluded the report from Roche Labs.
The majority incorrectly observes that Dr. Demers was in charge of the test in question. On the contrary, Dr. Demers' function in these proceedings was to supervise the preparation of the report. The supervision of the preparation of a report is quite different from supervising the test. Indisputably, the test was supervised by someone other than Dr. Demers. Dr. Demers did perform the equivalent of Lloyd Osborne who only reviewed the results of the Roche Labs report. While the majority concludes that the trial court did not abuse its discretion in excluding the lab report because of Osborne's involvement, it nonetheless ruled that the trial court abused its discretion in refusing to allow the admission of the Fairfax Labs reports. The functions of both persons were essentially the same. The majority examines each conduct but reaches inconsistent conclusions based on essentially identical conduct.
*1145 For the foregoing reasons, I respectfully dissent.
NOTES
[1] Unlike Dr. Demers, Roche was not called to the stand.
[2] La.R.S. 397.3(B)(1)(b) was amended by Acts 1995, No. 1144, § 1 to shift the burden of proof to the putative father when a validly certified blood report indicates a 99.9% or greater probability that the alleged father is in fact a parent of the child. In such cases, there is a rebuttable presumption of paternity.