liPRICE, Judge Pro Tem.
The State of Louisiana, Department of Social Services, filed this paternity and child support action against the defendant, Charles White. The suit was filed on behalf of Jeco-ry Johnson, the minor child of Janell Johnson. After a trial on the merits, the trial court entered judgment in favor of Mr. White and dismissed the state’s action. The State of Louisiana now appeals. For the foregoing reasons, we reverse and remand.
FACTS
The state filed a petition on February 8, 1991, to establish paternity against Charles White. Mr. White filed an answer denying paternity, and the state subsequently obtained a court order directing that blood tests be taken pursuant to LSA-R.S. 9:396 et seq., the Uniform Act on Blood Tests to Determine Paternity. On March 30, 1992, the state filed a written report into the record as required by LSA-R.S. 9:397.3. On April 2, 1992, Mr. White was personally served with certified copies of notice of the filing and certified copies of the report. A trial on the merits was held on December 16, 1992.
At trial, the blood test report was initially admitted into evidence over Mr. White’s objection. The test results showed a combined paternity index of 3,577 to 1. In other words, Mr. White is 3,577 times more likely to be the father of the child than another randomly selected black male. That figure converts into a 99.97% probability of paternity, as compared to an untested, unrelated man of the North American black population.
*368 The state first called Janell Johnson to testify. She testified that she and Mr. White began their relationship in 1988. She further testified that during their two-year relationship, they had sexual intercourse frequently and did not use contraceptives. According to Ms. Johnson, Jecory was born July 11, 1990, and the relationship did not end until September of 1990. She maintained that she did not have sexual intercourse with any other man around theQtime Jecory was conceived.
Ms. Johnson’s testimony was corroborated by her sister, Delores Johnson. Delores recounted that Mr. White told her that he and Janell were dating. She testified that he came over to her house regularly to visit with Janell whenever she was home fromjjcollege, and sometimes the couple stayed out the entire night. She further testified that Mr. White told her that he was Jecory’s father. Both Janell and Delores asserted that he had bought some gifts and necessities for Jecory.
Mr. White offered a very different account of his relationship with Janell. He admitted that they were friends, but he denied ever dating or having sex with her. He testified that he never privately or publicly claimed the child was his. He stated that he only went over to Janell’s neighborhood to “hang out” with his friends, and not to see her. However, he did not deny buying Christmas gifts for Jecory, but stated that he also bought a gift for a male friend’s baby.
At the conclusion of the testimony, the trial court determined that, with respect to the blood tests, the chain of custody was not verified as to who packed the blood, in accordance with LSA-R.S. 9:397.2. As a result of this determination, the trial judge ruled that the blood test results were inadmissible. Relying only on the testimony given on behalf of each party, the trial court concluded that the state failed to prove Charles White was the biological father of Jecory Johnson.
DISCUSSION

I. Admissibility of Blood Test Report

The state asserts that the trial court erred in excluding from evidence the previously admitted blood test report. It claims that the report had already been admitted into evidence, with the trial court’s permission, when the court reconsidered and sustained the defendant’s objection.
The state contends that, according to LSA-R.S. 9:397.3, unless the blood testing procedure is timely challenged, the report shall be admitted in evidence at trial as prima facie proof of its contents. LSA-R.S. 9:397.3(A) provides:
A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with the Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
LLSA-R-S. 9:397.3(A) (emphasis added).
In the instant case, notice of the filing of the blood test report, and certified copies of the report, were served upon Mr. White on April 2, 1992. He did not object to the admission of the blood test report until approximately eight months later, December 16, 1992, the date of trial. The record reveals that Mr. White failed to comply with LSA-R.S. 9:397.3(A) by timely challenging the testing procedure or the admissibility of the blood test report. See State in the Interest of A.N.V. v. McCain, 26,076 (La.App. 2d Cir.), 637 So.2d 650; 643 So.2d 137; State v. Givens, 616 So.2d 259 (La.App. 2d Cir.1993); State in the Interest of Ezell v. Evans, 600 So.2d 90 (La.App. 2d Cir.1992); and Rigaud v. Deruise, 539 So.2d 979 (La.App. 4th Cir. 1989), appeal after remand, 613 So.2d 761 (La.App. 4th Cir.1993).
However, LSA-R.S. 9:397.3(B) provides, in part:
[I]f there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted into evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and exam *369 ine those making the original of the report as witnesses under cross-examination.
LSA-R.S. 9:397.3(B) (emphasis added). According to the implications of this statute, even if a defendant fails to timely challenge the blood testing procedure, the court may still exclude the blood test report if it finds there has been a procedural error in the administration of the tests.
In this case, Mr. White’s untimely objection was based on a denial of paternity, not on a contention that there was any error in the testing procedure. See State v. Kuehlewind, 570 So.2d 179 (La.App. 5th Cir. 1990), writ denied, 573 So.2d 1134 (1991). However, the trial court noticed, apparently upon inspection of the report,'that the section on each individual’s “Chain of Custody” document which states, “I certify that I have drawn and packed the blood,” was neither signed nor notarized. A defect in the chain of custody is a procedural error within the context of LSA-R.S. 9:397.3. See Rigaud v. Deruise, supra. Thus, although Mr. White failed to timely and properly object, |4the trial court, on its own motion, noted a procedural error and, consequently, refused to admit the blood test report into evidence.
Accordingly, we conclude that the trial court had the authority, upon its own motion, to exclude the blood test report from evidence.

II. Chain of Custody

The state contends that the trial court erred in determining that there was a procedural error in the administration of the blood tests. It argues that it established chain of custody in accordance with LSA-R.S. 9:397.2.
Under the Uniform Act on Blood Tests to Determine Paternity, “[t]he chain of custody of blood or tissue samples ... may be established by affidavit if verified documentation of the chain of custody is submitted with the expert’s report and if such documentation was made at or near conducted business activity.” LSA-R.S. 9:397.2.
In this case, Dr. Lloyd C. Osborne, Associate Director of the Department of Paternity Evaluation at Roche Biomedical Laboratories in Burlington, North Carolina, signed an affidavit on June 7,1991, which certified that the blood test results were independently reviewed by him, and are correct as reported. Additionally, the report includes client identification forms and client authorization forms. On the client authorization forms, there are signed chain of custody statements showing who packaged the specimens, when they were packaged, when they were received by the laboratory, and certifying that there was no evidence that the packages were tampered with or opened. On Mr. White’s client authorization form, Dawn Jeffries signed her name on March 26, 1991, at 11:40 a.m., affirming that she packaged the specimen(s). She also signed Ms. Johnson’s client authorization form on April 15, 1991, at 1:00 p.m., affirming that she packaged the specimen(s).
The trial judge was concerned with another document in the report which is labeled “Chain of Custody.” The first section of this document was to be completed by the technician who packaged the specimens and the second section was to be completed by the laboratory personnel who received the package. The first section states:
Is! hereby certify that I have drawn and packaged the blood samples, according to the written guidelines of Roche Biomedical Laboratories, Inc., on _ the persons whose names and photographs appear on the attached client authorization form, this _day of_,_
This section remained incomplete on each party’s form. It was neither signed by the technician who packaged the specimens nor notarized. Although Ms. Jeffries signed the chain of custody statements on the client authorization forms, the signature of the person who packaged the specimens is absent on each party’s “Chain of Custody” document.
The trial court determined that the chain of custody was not properly verified. See Rigaud v. Demise, supra. We find that the trial court did not err in determining that the chain of custody requirements were not followed in accordance with LSA-R.S. 9:397.2. However, we do find that the trial judge erred in dismissing the state’s action.
“If the court finds there has been a procedural error in the administration of the *370 tests, the court shall order an additional test made by the same laboratory or expert.” LSA-R.S. 9:397.3(B) (emphasis added). Under these circumstances, the trial court is mandated to order additional tests. For this reason, we conclude the trial judge should not have dismissed the state’s action and, instead, should have ordered additional blood tests to be taken by Charles White, Janell Johnson, and Jecory Johnson.
Based on our finding, we pretermit any discussion of whether the state has proved paternity by a preponderance of the evidence.
CONCLUSION
Accordingly, we reverse the trial court’s judgment dismissing the state’s paternity suit against Mr. Charles White. Further, we remand the ease back to the trial court to order additional blood tests to be taken by Mr. Charles White, Ms. Janell Johnson, and Jecory Johnson, in accordance with LSA-R.S. 9:397 et seq. All costs of this appeal are assessed to appellant.
REVERSED AND REMANDED.